## Sherman House Hotel Company v. Benjamin Cirkle.

### Gen. No. 13,339.

1. LANDLORD AND TENANT—*right of latter to authorize re-entry.* Our statute of forcible entry and detainer took away the right from the landlord or person whose possession had been invaded to make a forcible entry, and gave a civil remedy to regain possession. The tenant may, however, by his lease waive the civil remedy so provided by the statute and authorize a re-entry as at common law, where the facts entitle the landlord to a recovery of possession.

2. DAMAGES—*what competent in mitigation of.* In an action to recover damages for wrongful dispossession of demised premises, in which loss of profits is sought to be recovered by way of damages, it is competent in mitigation of such damages to show that the business from which such loss of profits is claimed to have resulted has been made illegal.

Trespass. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed and remanded. Opinion filed October 4, 1907.

**Statement by the Court.** On October 13, 1902, the Sherman House Hotel Company, appellant, leased to appellee Cirkle, by a written lease, a space five feet in width by sixteen feet in length, in the rotunda of the Sherman House Hotel at the corner of Clark and Randolph streets in Chi-

cago, "to be used for the sale of theatre tickets, souvenir postal cards, souvenirs and novelties, and nothing else whatsoever, and particularly not for the sale of any merchandise which would in any way conflict with the goods now sold in said Sherman House."

The term of the lease extended from November 1, 1902, to October 1, 1904, and the rental received was $40 per month, payable in advance, on the first day of each and every month. The lease contained the following provisions and conditions material to be considered in this controversy:

"It is further agreed by the said party of the second part that neither he nor his legal representatives will underlet said premises, or any part thereof, or assign this lease, without the written assent of the said party of the first part had and obtained thereto."

"* * * If default shall be made in any of the covenants or agreements herein contained to be kept by the said party of the second part, his executors, administrators or assigns, it shall and may be lawful for the said party of the first part, its heirs, executors, administrators, agent, attorney or assigns, at its election, to declare said term ended, and into the said premises, or any part thereof, either with or without process of law, to re-enter, and the said party of the second part, or any other person or persons occupying in or upon the same to expel, remove and put out, using such force as may be necessary in so doing, and the said premises again to repossess and enjoy as in its first and former estate, * * * and if at any time said term shall be ended at such election of said party of the first part * * * as aforesaid, or in any other way, the said party of the second part * * * does hereby covenant and agree to surrender and deliver up the said above described premises and property peaceably to the said party of the first part * * * immediately upon the determination of the said term as aforesaid; and if he shall remain in possession of the same after such default, or after the termination of this lease, in any of the ways above named, he shall be deemed guilty of a forcible detainer of said premises under the statute, and shall be subject to all the conditions and provisions above named, and to eviction and removal, forcible or other-

wise, with or without process of law, as above stated.    And the said party of the second part hereby waives his right to any notice from said party of the first part of its election to declare said lease at an end under any of its provisions, or any demand for the payment of rent, or the possession of the premises leased herein.    *    *    * "

The evidence in the record tends to show that appellee installed in the space mentioned in the lease a pine counter, stained in imitation of cherry, costing $20, a theatre ticket sign board costing $11, and a showcase costing $5.    This was the extent of his fixtures.    He placed his son in charge of the stand and gave very little personal attention to the business there conducted.    Appellee sublet a portion of the booth, and a young lady was engaged in selling perfume and feather flowers in the booth.    Appellant's manager observed this and early in January, 1903 made complaints and objections to appellee's representative and later to appellee on account of this, and because they were dealing in unauthorized telephonic communications, and on the ground of the subletting of the premises in violation of the terms of the lease.    Complaints were also made to appellee by the manager and assistant manager of appellant that several small boys were permitted to occupy the space behind the counter and that they greatly annoyed the patrons of the hotel by wrestling and horse-play in which they indulged in the booth and the rotunda of the hotel.    Herbert Cirkle, a son of appellee, had charge of the business of the booth most of the time.    He told the assistant manager of the hotel that a part of the counter space had been sublet to a young lady to sell perfume, and when remonstrated with for thus violating the lease, insisted on subletting a part of the booth.

During the evening of January 7, 1903, appellant carefully removed appellee's counter and showcase to another portion of the hotel, and the goods of appellee were inventoried and stored away in the counter.    Appellee was notified that the property was at his disposal.    The rent which appellee had paid for the month of January, 1903, was tendered to appellee January 7, 1903.

No force was used in the removal of appellee's property other than was required to move the counter carefully from its position in the rotunda of the hotel to another place in the hotel.    The removal was made in the absence of appellee and his agents.    No previous declaration of forfeiture of the lease was made to appellee by appellant.

Appellee brought this suit in trespass for damages against appellant for a wrongful eviction from the premises leased and for a confiscation of his property.    The original declaration contained three counts in the usual form, setting out the lease in *hæc verba.*    Subsequently an amended declaration was filed setting forth more particularly the nature and profits of plaintiff's business, the value of the location of the demised premises, especially for the sale of theatre tickets at advanced prices.

Appellant pleaded the general issue, and special pleas, that the plaintiff, appellee, had broken the conditions of the lease by underletting the premises and assigning the same without the written assent of appellant; that appellee had committed a breach of the conditions of the lease by selling other merchandise than that permitted thereby, and particularly such as conflicted with the goods sold in the Sherman House by appellant; that appellee contrary to the conditions in the lease had carried on his business in such a disorderly manner that he disturbed appellent in the quiet enjoyment of the part of the premises not demised to appellee; that appellant, upon the occurrence of said defaults, had declared the term of said lease ended; that appellee had by agreement waived any right to notice from appellant of its election to declare the lease at an end, and appellant had re-entered the premises and expelled appellee, using only such force as was necessary for the purpose.

Issues were joined on these pleas.

On the trial the jury found the issues for the plaintiff, appellee, and assessed his damages at $6,000.    A *remittitur* was entered by appellee in the sum of $2,500 and judgment was entered by the Circuit Court for $3,500 against appellant.

FELSENTHAL, FOREMAN & BECKWITH, for appellant.

D'ANCONA & PFLAUM, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The cause must be remanded to the Circuit Court for a new trial for errors in procedure, and therefore we do not find it necessary to consider or to express any opinion upon the merits of the cause.

The lease contained a provision for re-entry by appellant for condition broken and the removal of appellee, using such force as might be necessary in so doing, with or without process of law.    The lease also provided that "the said party of the second part hereby waives his right to any notice from said party of the first part of its election to declare said lease at an end under any of its provisions, or any demand for the payment of rent or for the possession of the premises leased herein."

Evidence was introduced by appellant tending to show a violation by appellee of the provision of the lease whereby appellee covenanted that he would not underlet said premises or any part thereof, or assign the lease without the written assent of appellant, and tending also to show a violation of the provision specifying the kind of merchandise which might be sold in the booth.

Appellant requested an instruction which was refused by the court as requested; but the court modified it and gave it to the jury in the form below set forth, the italicized portion of the instruction being the modification or addition made by the court:

"The court instructs the jury as a matter of law that if the jury believe from the evidence *and under the instructions of this court* that the plaintiff, Cirkle, violated the terms and conditions in the lease under which he occupied the premises in question under the defendant, *and if the jury further believe from the evidence that the defendant declared said term ended because of such violations,* then, by the terms of the lease the defendant had a right to remove the

plaintiff or his employees and property, using such force as was necessary to do so, and the plaintiff cannot recover in this action. *Before the defendant had a legal right to use force in putting the plaintiff out of the leased premises, the law and the lease required of the said defendant that he should, in a formal and distinct manner, declare to the plaintiff that the term of his lease was ended.*"

Appellant assigns error upon the giving of the instruction as modified, contending that the law and the lease did not require it to disclose to appellee in a formal and distinct manner that the term of this lease was ended.

"At the common law, whenever the right of entry existed the disseizee might lawfully regain the possession by force." 1 Chitty's Gen. Practice, 46. In Hyatt v. Woods, 4 John., 150, the court said: "If the entry in such case be with a strong hand a multitude of people, it is an offense for which the party entering must answer criminally." Our statute of forcible entry and detainer took away the right from the landlord or person whose possession had been invaded to make a forcible entry, and gave a civil remedy to regain possession. Fabri v. Bryan *et al.*, 80 Ill., 182. The question presented is whether a wrongdoer by contract may not waive the civil remedy provided by the statute and authorize a re-entry as at common law.

In Ambrose v. Root, 11 Ill., 497, an agreement was before the court providing that in case of default in paying a certain installment of the purchase price of a certain mill property on a day named, the vendor Root might "enter and take possession of said mill, using all the force necessary to obtain the actual possession thereof; and such entry shall not be regarded as a trespass, nor sued for as such, nor in anywise unlawful." The court in upholding the agreement and the retaking of possession thereunder, at page 499, said:

"This was not an agreement to do an unlawful act. It cannot be supposed that the parties had it in contemplation at the time of executing the contract, that the plaintiff could wrongfully attempt to retain the possession, or that there would be any occasion to resort to force to put him out.

The agreement was not made for the purpose of committing an illegal act, nor with a knowledge that one would be committed, and had the defendant complied with his obligation, as the law will presume was his intention at the time, none would have followed. * * * Under our statute of forcible entry and detainer, a party having by law a right of entry, has no authority to make such entry by force; but this statute provides a civil remedy which the wrongdoer in possession may at any time waive."

This case was cited, followed and approved in Page *et al.* v. DePuy, 40 Ill., 506, where a lease containing a similar provision of re-entry and removal was before the court, and the re-entry and removal was justified upon the ground that it was authorized to be made, and the law does not prevent a person from giving such authority.

And again Fabri v. Bryan, *supra,* where the tenant held over, the court said where a similar licence to the landlord to the one contained in the lease in this case was before it, that an entry by the landlord unaccompanied by unnecessary force was lawful because sanctioned by the agreement of the parties.

It is clear, we think, under these authorities, that appellee could waive the civil remedy provided by the statute, and that by the lease pleaded by him and in evidence, he did waive it.

The particular vice in the instruction insisted upon by appellant is that the instruction states the law to be that "the law and the lease required of the said defendant that he should, in a formal and distinct manner, declare to the plaintiff that the term of this lease was ended," before the appellant had the legal right to use force in putting appellee out of the leased premises.

The lease before us contained the following at the end of, and as a part of the provision under consideration:

"And the said party of the second part hereby waives his right to any notice from said party of the first part of its election to declare this lease at an end under any of its pro-

visions, or any demand for the payment of rent or the possession of the premises leased herein."

There was evidence before the jury of various acts in contravention of the conditions of the lease which would warrant the jury in finding that appellant was justified in forfeiting the lease. It is, beyond question, within the right and power of a tenant to waive his right to notice from his landlord of the election of the latter to declare his lease ended.

By the clause above quoted this declaration in a formal and distinct manner to appellee was waived. The language used in the lease is unambiguous and clear. The instruction as modified, in view of the provisions of the lease and the law, was therefore erroneous.

Furthermore, the right of appellant to re-enter, under the provisions of the lease, upon covenant broken, existed independently of an express forfeiture of the lease. Schaefer v. Silverstein, 46 Ill. App., 608. For this reason also the instruction was erroneous.

By the additional counts to his declaration appellee averred that the principal part of his business conducted in the leased premises was the sale of theatre tickets at a profit to the appellee. Evidence was offered by appellee, consisting of the books of account kept by him, to show the amount of net profits made by the business while he was in possession of the demised premises, and on behalf of appellee testimony was given to the effect that theatre tickets were sold in advance of the regular stamped or printed price at which the theatres sold them to the general public.

Appellant offered in evidence, in mitigation of the damages thus shown by appellee, an ordinance of the city of Chicago adopted March 23, 1914, prohibiting the sale of any theatre tickets at a higher price than that printed thereon. The ordinance offered tended to show that the business of theatre ticket scalping as conducted by appellee was rendered thereby illegal in the city of Chicago after the date of its adoption, and would afford a fair basis for the jury to conclude that during the remainder of the term of the

C. U. T. Co. v. Duckstein.

lease there would be a decrease in the business and the profits thereof.

The court excluded the ordinance on the ground that it was not pertinent to the issue; and also on the ground that the city council had no power to pass it.

We do not find that counsel for appellee question in their brief the validity of the ordinance. They seek to justify the ruling of the court on other grounds. Counsel for appellee under the rule laid down in Chapman v. Kirby, 49 Ill., 211, showed the profits for a period preceding the time when the injury was inflicted. By the same authority appellant could show that by depression in trade or other causes the profits would be less after the ordinance was adopted. The illegality of the business after the adoption of the ordinance would have a direct tendency to cause a decrease in the business and the profits thereof, if not a complete cessation of the prohibited business. We think the ordinance was relevant and proper under the general issue in mitigation of damages, and that it was error to exclude it. Am. & Eng. Ency. of Law, volume 25, p. 600.

For the errors indicated the judgment of the Circuit Court is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*